UNITED STATES BANKRUPTCY COURT
DISTRICT OF ALASKA

| | |
|---|---|
| In re:<br><br>HEARTS AND HANDS OF CARE, INC.,<br><br>Debtor. | Case No. 19-00230-GS<br>Chapter 11 |

### MEMORANDUM DECISION DENYING APPLICATION OF WILLIAMS, LLP FOR ALLOWANCE OF FEES AND REIMBURSEMENT OF EXPENSES

T. Edward Williams, Esq. of Williams, LLP seeks approval of attorney fees and expenses incurred both pre- and postpetition while representing the debtor Hearts and Hands of Care, Inc. (Hearts and Hands). The United States Trustee (UST) has opposed the application, and Hearts and Hands has joined in the opposition. The court heard oral argument on March 4, 2020, at which appearances were noted on the record. Because Mr. Williams was never employed by the bankruptcy estate, his application for approval of fees and expenses as administrative expenses must be denied.

**A.    BACKGROUND**

The facts relevant to Mr. Williams's current application begin with his filing of a chapter 11 petition for Rodriguez Investments, LLC on July 1, 2019.[1] Both Rodriguez Investments and Hearts and Hands are owned by Kisha Smaw. On July 12, 2019, Mr. Williams filed his application to be employed as counsel for Rodriguez Investments. *Rodriguez*, ECF No. 13. The application to employ states that the debtor sought to employ Mr. Williams, in part, due to "his extensive background in bankruptcy matters...." ECF No. 13 at 2.

---

[1] Case no. 19-00207-GS.

On July 22, 2019, Mr. Williams filed the chapter 11 petition for Hearts and Hands. That same day, he also filed a petition for a third related entity, Savion Investments, LLC.[2] Mr. Williams moved for joint administration of all three bankruptcy cases. Exactly what was to be accomplished by joint administration was a bit unclear, though the motions recited:

> Debtors also seek an Order authorizing them to file their monthly operating reports by consolidating the information required for each Debtor in one report. That report will break our [sic] all specific information on a debtor–by–debtor basis. Further, Debtors seek to file a single Creditor's Matrix, tax and other financial documents, schedules—with a breakdown, if necessary, on a debtor–by–debtor basis, and that all deadlines apply to all Debtors.

*Hearts and Hands*, ECF No. 2, at p. 2.

The UST objected to the motions for joint administration and Mr. Williams's employment in Rodriguez Investments. Mr. Williams failed to place either matter on for hearing. This lead the court to include both matters for discussion at the initial status conference scheduled in Rodriguez Investments for August 14, 2019. *Rodriguez*, ECF No. 32. That scheduling conference was continued to the next day to be heard together with the status conference in Hearts and Hands.

As a result of the status conferences, the court entered an order in the Rodriguez Investments and Hearts and Hands bankruptcy cases requiring Mr. Williams to associate with local counsel. ECF No. 41. The court also set a hearing on the application to employ in Rodriguez Investments for September 11, 2019. *Id.*

On August 20, 2019, Thomas Buford entered his appearance on behalf of Hearts and Hands in its bankruptcy. *Hearts and Hands*, ECF No. 42. Mr. Buford filed his application to be

---

[2] Case no. 19-00231-GS.

2

employed as counsel for the debtor-in-possession, and on October 16, 2019, the court entered its order approving Mr. Buford's employment. ECF No. 104.

On September 11, 2019, the court held its hearing on the application to employ Mr. Williams as counsel for Rodriguez Investments in its bankruptcy case. Ultimately, Mr. Williams withdrew his application for employment on the record. The court entered an order denying Mr. Williams's employment based upon the withdrawal of his application. *Rodriguez*, ECF No. 50.

As a result of these events, Mr. Williams has never noticed his motion for joint administration for hearing. Rodriguez Investments remains unrepresented in its bankruptcy. The UST has moved to compel Mr. Williams to disgorge the monies Mr. Williams received as a retainer in the Rodriguez Investments's bankruptcy. ECF No. 47. And Hearts and Hands has moved to dismiss the Rodriguez Investments bankruptcy. ECF No. 52.

Within the Hearts and Hands's case, Mr. Williams was permitted to appear *pro hac vice*, but has never filed an employment application.[3] Nonetheless, he now seeks approval of an administrative expense for his legal services and expenses incurred while representing Hearts and Hands. Within his application, Mr. Williams seeks approval of $49,601.75 in fees and $2,869.71 in expenses. *Hearts and Hands*, ECF No. 198. The day before the hearing on his application, Mr. Williams filed an affidavit attaching his billing statement reflecting fees for 117.90 hours for $51,157.75 and $1,747.50 in expenses. ECF No. 249. The billing statement includes 12 entries totaling 23.5 hours for $9,987.50 in attorney fees incurred prior to the petition date.

---

[3] Mr. Williams's reference in the application to an employment order entered on August 19, 2019 is actually the order approving his *pro hac vice* appearance in Hearts and Hands, not his employment. *See Hearts and Hands*, ECF No. 37.

The United States Trustee (UST) has opposed the fee application. ECF No. 200. As a preliminary matter, the UST argues that Mr. Williams is not entitled to any compensation because he was ever employed by the bankruptcy estate. The UST also argues that Mr. Williams has failed to establish the reasonableness of his fees. At the time the UST filed the opposition, Mr. Williams had not yet filed his billing statements. Hearts and Hands joined in the UST's opposition. ECF No. 220. Mr. Williams did not file any reply, but at oral argument argued that his fees and expenses should still be approved as an administrative expense under § 503(b)(2) because they benefitted the estate.

**B.     ANALYSIS**

The court need not address the reasonableness of Mr. Williams's fees because the failure to obtain an order approving his employment precludes him from receiving compensation for services provided to the debtor as a matter of law. Section 330(a)(1) provides that a court may award a professional person employed under § 327 or § 1103 reasonable compensation and expenses. In turn, § 327(a) authorizes a trustee, and therefore a debtor-in-possession, to employ attorneys "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." These statutory requirements lead the Ninth Circuit Bankruptcy Appellate Panel (BAP) to conclude long ago: "Court approval of the employment of counsel for a debtor in possession is *sine qua non* to counsel getting paid. Failure to receive court approval for the employment of a professional in accordance with § 327 and Rule 2014 precludes the payment of fees." *DeRonde v. Shirley (In re Shirley)*, 134 B.R. 940, 943–44 (B.A.P. 9th Cir. 1992). The BAP explained that the court's involvement with the employment and compensation of estate professionals was

4

"premised on the need for and appropriateness of judicial scrutiny of arrangements between a debtor and his attorney to protect creditors of the estate and the debtor against overreaching by an officer of the court who is in a peculiarly advantageous position to impose on both the creditors and his client." *Id*. at 945 (quoting Federal Rules of Bankruptcy Procedure, Rule 2017 Advisory Committee note (1983)). The BAP further held that an attorney who failed to be employed by the bankruptcy estate could not circumvent the Bankruptcy Code by seeking an award of fees under state law theories or recovery in state court. *Id*. at 945.

In *McCutchen, Doyle, Brown & Enersen v. Off. Comm. Of Unsecured Creditors (In re Weibel, Inc.),* 176 B.R. 209 (B.A.P. 9th Cir. 1994), the BAP again considered a request for compensation for services provided by an attorney for the debtor that was not employed by the estate. In *Weibel,* the attorneys were denied employment for a lack of disinterestedness. Nonetheless, they argued that they were entitled to compensation under *quantum meruit* principles and § 503(b)(1)(A). The BAP held that "neither that theory, nor any part of the Code, provides a basis for allowing fees under these facts." *Id*. at 211. It reasoned that "[c]ompensation to professionals acting on behalf of the estate must be based on provisions of the Code. The Code does not provide for fee awards based on state law theories such as *quantum meruit*." *Id*. at 212. As to the attorney's claims under § 503(b)(1), the BAP concluded that to permit an attorney that could not receive compensation under the specific rubric of §§ 327 and 503(b)(2) to recover under the more general provisions of § 503(b)(1) would render the more specific provision nugatory. For that reason, it held that "Section 503(b)(2), with its specific reference to compensation to professionals under Section 330, [was] the only part of Section 503(b) under which such professionals can receive compensation." *Id*. at 213. *See also In re First Magnus*

5

*Fin. Corp.*, 2009 WL 7809001, at *6 (B.A.P. 9th Cir. Feb. 24, 2009) (quoting *In re Milwaukee Engraving Co., Inc.*, 219 F.3d 635, 637 (7th Cir. 2000)) ("'One might as well erase § 503(b)(2) from the statute if attorneys may stake their claims under § 503(b)(1)(A)....'"); *In re Albrecht*, 233 F.3d 1258, 1261 (10th Cir. 2000) ("The bankruptcy court properly refused to award fees using § 503(b)(1)(A) as an equitable remedy."); *Milwaukee Engraving*, 219 F.3d at 636 ("By making express provision for employment under § 327, payment under § 330, and priority under § 503(b)(2), the Code logically forecloses the possibility of treating § 503(b)(1)(A) as authority to pay (and give priority to) claims that do not meet its substantive requirements."); *Cushman & Wakefield of Conn., Inc. v. Keren Ltd. P'Ship (In re Keren Ltd. P'ship)*, 189 F.3d 86, 88 (2d Cir. 1999) ("[A] broker or other professional generally may not avoid the requirements of Sections 327 and 330 by seeking administrative expense allowance under Section 503(b)(1)(A) rather than Section 503(b)(2)."); *F/S Airlease II, Inc. v. Simon,* 844 F.2d 99, 108–09 (3d Cir. 1988) (a professional hired to "assist the [debtor-in-possession] in carrying out the [debtor-in-possession's] duties" under § 327(a) cannot rely on section 503(b)(1)(A) as a way of circumventing section 327(a), where said professional has not obtained prior approval of his or her employment).

At oral argument, Mr. Williams cited the court to several cases not included in his opposition.  Predominantly, the cases cited involved application of § 503(b)(1) in situations where the creditor seeking the administrative expense claim was not a professional of the bankruptcy estate subject to the provisions of §§ 327 and 330.  In *In re Garcia*, 2016 WL 7324153 (Bankr. E.D. Cal. Dec. 14, 2016), the creditor seeking the administrative expense was identified as the plan proponent of the confirmed plan.  The creditor argued that its attorney's

6

services satisfied the substantial contribution required under § 503(b)(1)(A). *Id.* at *7. Despite some question as to the relationship between the creditor and its counsel, the bankruptcy court was careful to distinguish a payment to the creditor for its contribution through the expense of its attorney under § 503(b)(4) from direct payment of the creditor's attorney fees to counsel who were not employed by the estate. *Id*. at 4-6. *Garcia* provides no support for the proposition that a professional of the estate may be paid under § 503(b)(1)(A).

Similarly, Mr. Williams's citation to *In re Walker Land & Cattle, LLC,* 535 B.R. 348 (Bankr. D. Idaho 2015) is unhelpful. There, the estate employed an accountant. The accountant hired an attorney to advise and represent her. The accountant sought to include her legal expenses as part of her administrative expense claim through application of § 330(a)(1)(B) rather than for substantial contribution under § 503(b)(1)(A). *Id.* at 352. The bankruptcy court denied the accountant's application to recover her legal expenses because such expense was not necessary for the task for which she was employed. *Id*. at 356.

Mr. Williams also cited the court to *In re Ginji*, 117 B.R. 983 (Bankr. D. Nev. 1990), *In re Bicoastal Corp.,* 117 B.R. 700 (Bankr. M.D. Fla. 1990), *In re St. Pierre*, 4 B.R. 184 (Bankr. D. R.I. 1980) and *In re The Leonard Jed Co.,* 118 B.R. 339 (Bankr. D. Md. 1990), though he acknowledged that the cases might not be on point. Each of these cases concerns approval of fees and expenses under § 330 for approved professionals of the estate rather than any attempt to recover compensation under § 503(b)(1)(A) by a professional that was *not* employed by the estate.[4] Indeed, in *Bicoastal Corp.,* the bankruptcy court noted that it had denied the first fee

---

[4] *St. Pierre* actually involves a chapter 7 debtor attorney's fees disclosed in his statement of attorney compensation filed under then-Fed. R. Bankr. P. 219(b), so the court presumes no employment application was required to be filed in that case.

7

application submitted by the accountants for the unsecured creditors' committee because the company had not been employed at the time it rendered the services. *Bicoastal Corp.,* 117 B.R. at 701.

Mr. Williams's fee application must, therefore, be denied because he was not employed by the bankruptcy estate for Hearts and Hands.

While Mr. Williams has never applied to be employed by this bankruptcy estate, it is worth noting that he *could not* be employed by the estate even if he had applied. Mr. Williams's billing statement, submitted the day before the hearing on his fee application, establishes that Hearts and Hands owed him $9,987.50 for pre-petition work as of the petition date. ECF No. 249. Such debt precludes any claim of disinterestedness required for employment by the estate. 11 U.S.C. § 327(a); *In re Woodcraft Studios, Inc.*, 2016 WL 4045379, at *8 (B.A.P. 9th Cir. July 22, 2016) ("[B]y holding a claim for prepetition services [attorney] was not disinterested...the fact that [attorney] was not disinterested meant that he was not employable."). When the UST raised this point at oral argument, Mr. Williams countered that it should have been raised previously. This ignores the fact that Mr. Williams never filed an employment application, and therefore never filed a declaration in support to disclose his pre-petition claim. Nor is Mr. Williams listed as an unsecured creditor in the debtor's schedules that he himself prepared and filed. ECF No. 27.

//

**C.    CONCLUSION**

For the reasons stated above, the court will issue a separate order denying the Application of Williams, LLP for Allowance of Fees and Reimbursement of Expenses (ECF No. 198).

DATED: March 11, 2020

BY THE COURT

 /s/ Gary Spraker
GARY SPRAKER
United States Bankruptcy Judge

Serve:  T.E. Williams, Esq.
        T. Buford, Esq.
        K. Perkins, Esq.
        U.S. Trustee
        ECF Participants per NEF